**A. Hameed HAWANA, Plaintiff,**

v.

**CITY OF NEW YORK, Defendant.**

**No. 00 CIV. 8591(JGK).**

United States District Court,
S.D. New York.

Nov. 11, 2002.

A. Hameed Hawana, Brooklyn, NY, pro se.

Stacey L. Cohen, Michael D. Hess, Corporation Counsel, City of New York, for Plaintiff.

Donald C. Sullivan, Corporation Counsel, New York City, for Defendant.

## *OPINION AND ORDER*

KOELTL, District Judge.

The plaintiff, A. Hameed Hawana, who appears pro se, brings this action against his former employer, the City of New York ("the City"). The plaintiff alleges that the City discriminated against him on the basis of race, gender, national origin, age, color and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* ("ADA"). While the plaintiff did not specifically allege a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), liberally construed his complaint concerning age discrimination is a complaint alleging a violation of the ADEA. The plaintiff further alleges retaliation, as well as same-sex sexual harassment at the hands of a supervisor. The defendant now moves for summary judgment pursuant to Fed.R.Civ.P. 56.

The evidence submitted to the Court reflects the following facts as construed in the light most favorable to the plaintiff. The plaintiff describes himself as a man of Egyptian race and national origin, currently age 58, suffering from severe depression, sleep and panic disorders, and high blood pressure. (Compl. ¶ 7.) On September 18, 1986, the plaintiff was hired as a caseworker by a predecessor agency to the New York City Administration for Children's Services ("ACS"). (Def.'s Rule 56.1 St. ¶ 1; Pl.'s Resp. Rule 56.1 St. ¶ 1; Deposition of A. Hameed Hawana ("Hawana Dep.") at 126.) Between April 1997 and October 1999, numerous coworkers and supervisors filed internal grievances against the plaintiff alleging misbehavior including creating an intimidating, hostile and offensive work environment, making sexual gestures and remarks towards female coworkers, and calling a coworker "you fucking bitch." (Memoranda Re: Plaintiff's Behavior dated Apr. 17, 1997—Oct. 29, 1999 attached as Exs. M–DD to Declaration of Donald C. Sullivan dated Apr. 22, 2002 ("Sullivan Decl.").) The plaintiff attacks the veracity of these allegations. (Declaration of A. Hameed Hawana dated June 10, 2002.) Between 1996 and 1999, the plaintiff filed repeated requests to be

transferred out of his Manhattan ACS office but the transfers were denied. (Transfer Requests dated May 3, 1996—Oct. 5, 1999 attached as Exs. 2–8, 14, 15 to Pl.'s Mem. Opp. Sum. J.)

On September 18, 1997 the plaintiff filed a discrimination charge with the New York City Commission on Human Rights ("CCHR") in which he alleged that his Supervisor, Douglas Solomon, Coordinator Mara Milat, and Directors Frank Olton and John Pape discriminated against him because he was male and Egyptian. (Def.'s Rule 56.1 St. ¶ 5; Pl.'s Resp. Rule 56.1 St. ¶ 5.; CCHR Complaint dated September 18, 1997 ("CCHR Compl.") ¶¶ 8–11 attached as Ex. HH to Sullivan Decl.) The plaintiff alleged that Mr. Solomon sexually harassed him, and that Ms. Milat, Mr. Olton, and Mr. Pape failed to stop the harassment. (CCHR Compl. ¶¶ 8, 9.) Hawana also alleged that all four individuals subjected him to disparate treatment because he was male and Egyptian. (*Id.* ¶¶ 8–11.) The CCHR dismissed the plaintiff's complaint, finding no probable cause to believe the defendant's employees had engaged in the unlawful discriminatory practices or sexual harassment alleged by the plaintiff. (CCHR Determination and Order After Investigation dated Oct. 19, 1998 ("CCHR Det.") attached as Ex. II to Sullivan Decl.)

In November 1997, Charges and Specifications were brought against the defendant for a series of offenses including stealing a co-worker's lunch and threatening the Supervisor who investigated the incident. (ACS Charges and Specifications dated Nov. 21, 1997 attached as Ex. D to Sullivan Decl.) Proceedings on the matter were eventually adjourned in order for the parties to pursue their own solution. (Letter from Roger A. Hannon to A. Hameed Hawana dated Dec. 19, 1997 attached as Ex. OO to Sullivan Decl.) However, ACS eventually suspended Hawana

for ten days as a result of his misconduct in 1997. (New York Office of Collective Bargaining Decision dated Apr. 28, 2002 ("OCB Dec.") at 2 attached as Ex. A to Declaration of Jennifer Labate dated Oct. 21, 2002 ("Labate Decl .").)

Less than two years later, Charges and Specifications were again brought against the plaintiff but this time the alleged offenses were more serious. (ACS Charges and Specifications dated Aug. 4, 1999 attached as Ex. E to Sullivan Decl.) For example, Hawana allegedly told a coworker that he was going to "pick something up and beat the shit" out of his supervisor and posted a cartoon in his work space displaying the female genital area. (*Id.*) On August 25, 1999 an Informal Conference Hearing was held to address these incidents. (Informal Conference Decision and Recommended Penalty dated Oct. 25, 1999 ("Conference Dec.") attached as Ex. F to Sullivan Decl.) The Conference Leader found all of the charges against the plaintiff to be substantiated and recommended that Hawana be terminated. (*Id.*)

Hawana filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on December 10, 1999. (Def.'s Rule 56.1 St. ¶ 11; Pl.'s Resp. Rule 56.1 St. ¶ 11; EEOC Complaint dated Dec. 19, 1999 ("EEOC Compl.") attached as Ex. JJ to Sullivan Decl.) The plaintiff alleged incidents involving Ms. Milat, Mr. Olton, Mr. Pape and Ms. Doris Franko that he believed exhibited discrimination against him on the basis of his national origin, religion and disability in violation of Title VII and the ADA. (EEOC Compl.) The plaintiff also claimed that the defendants retaliated against him for filing earlier complaints. (*Id.*) The EEOC issued Hawana a right-to-sue letter on June 9, 2002. (Right–to–Sue Letter dated June 9, 2002 ("Right–to–Sue

Letter") attached to Complaint in Ex. A to Sullivan Decl.)

On December 7, 1999, a Step II hearing was held to review Hawana's appeal of the termination recommendation made by the Informal Conference Hearing Officer in October of that year. (Determination of Grievance Step II dated Jan. 12, 2000 ("Step II Det.") attached as Ex. H to Sullivan Decl.) The Hearing officer upheld the recommended penalty based on the nature and severity of the offenses after finding that Hawana's excuses for his actions were neither credible nor supported by testimony or investigation. (*Id.*)

Further Charges and Specifications were filed against the defendant on December 28, 1999. (ACS Charges and Specifications dated Dec. 28, 1999 attached as Ex. G to Sullivan Decl.) The charges accused Hawana of making a total of approximately 755 unauthorized and personal phone calls between December 1998 and March 1999. (*Id.*)

The plaintiff's termination became effective February 10, 2000. (Letter from Nicholas Scoppetta to A. Hameed Hawana dated Feb. 10, 2000 attached as Ex. J to Sullivan Decl.) The decision, as well the earlier 10–day suspension, were upheld by the New York Office of Collective Bargaining on April 28, 2002. (OCB Dec.)

At the hearing before the OCB arbitrator the plaintiff was represented by a lawyer for his union. The arbitrator held five days of hearings and heard testimony from the plaintiff, as well as from witnesses offered by both the plaintiff and the City. The arbitrator accepted written submissions and thereafter rendered a thorough opinion. The arbitrator concluded:

> After having been counseled numerous times by his supervisors, Mr. Hawana committed many acts of misconduct including taking a co-worker's lunch, threatening supervisors, disrespecting supervisors and co-workers,

harassing female employees, leaving work early, disregarding assigned work, disseminating sexually explicit material, and cursing co-workers. Virtually all of the charges have been substantiated by witnesses presented by the City. It is significant that the witnesses who corroborated the charges were not just supervisors, but co-workers who had witnessed Mr. Hawana's misconduct.

> I find the witnesses who corroborated the charges against Mr. Hawana to be credible. They had no personal animosity toward Mr. Hawana and they each testified about different instances of Mr. Hawana's misconduct. Their testimony was consistent and established a pattern of behavior by Mr. Hawana. No matter how many times he was told not to be disrespectful of female co-workers and to stay away from female co-workers unless he had business with them, he disregarded the warnings. He regularly and consistently disrespected supervisors and even went so far as to make threatening gestures and remarks.

> \* \* \* \* \* \*

> Additionally, Mr. Hawana has not acknowledged that he did anything wrong. He has not indicated he has any understanding of what conduct is not acceptable. He thinks he can curse and threaten his supervisors, harass and bother his female co-workers, and generally show disrespect for many of his co-workers. Mr. Hawana's misconduct has been consistent and persistent for the better part of at least three years. He has been counseled numerous times. The City unsuccessfully tried to explain to Mr. Hawana that his conduct was not acceptable and how he had to improve. He made no effort to improve and continued his disregard of supervisors' and co-workers' rights.

(OCB Dec. at 7, 9.) The arbitrator therefore concluded that neither the 10 day suspension nor the termination violated the Collective Bargaining Agreement between the City and the plaintiff's union.

The plaintiff filed this action on November 9, 2000 alleging retaliation and discrimination based on his Egyptian race and national origin, color, sex, and age.

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion. *See McPherson v. Coombe*, 174 F.3d 276, 279 (2d Cir.1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest' ") (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. *See McPherson*, 174 F.3d at 281; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620–21 (2d Cir.1999); *Champion v. Artuz*, 76 F.3d

483, 486 (2d Cir.1996); *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir.1994); *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988). In this case, by Notice to Pro Se Litigant Opposing Motion for Summary Judgment dated April 22, 2002, the plaintiff was advised of the procedures for responding to a motion for summary judgment, including the requirement to submit a response to the defendant's Rule 56.1 Statement and to submit counter-evidence and the plaintiff was provided with a copy of Rule 56. The plaintiff thereafter submitted a timely response to the motion, together with a response to the Defendant's Rule 56.1 Statement.

## II.

### A.

Under Title VII, the ADEA, and the ADA, the plaintiff was required to exhaust his administrative remedies by filing a charge of discrimination with the EEOC or the appropriate state agency before bringing this federal action. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.2001) (per curiam); *Dezaio v. Port Auth. of New York and New Jersey*, 205 F.3d 62, 64–65 (2d Cir. 2000); *Cooney v. Consol. Edison*, 00 Civ. 4965, 2002 WL 31059310, at *11 (S.D.N.Y. Sept.16, 2002); *Coffey v. Cushman & Wakefield, Inc.*, 01 Civ. 9447, 2002 WL 1610913, at *5 (S.D.N.Y. July 22, 2002); 42 U.S.C. § 2000e–5(e)–(f); 29 U.S.C.

§ 626(d). In New York, such a charge must be brought within 300 days of the alleged discriminatory events. *See* 42 U.S.C. § 2000e–5(c); *Dezaio*, 205 F.3d at 65; *Harris v. City of New York*, 186 F.3d 243, 248 n. 2 (2d Cir.1999). A subsequent action in federal court must be brought within ninety (90) days of notice that the charge has been dismissed. *See* 42 U.S.C. § 2000e–5(f)(1); 29 U.S.C. § 626(e); *see also Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 132 (2d Cir.1996); *Rosquist v. New York Univ. Medical Ctr.*, 97 Civ. 8566, 1998 WL 702295, at *5 (S.D.N.Y. Oct.7, 1998).[1]

The plaintiff's claim of age discrimination in this case must be dismissed because he never raised it before the EEOC, or even before the CCHR, and thus he has failed to exhaust his administrative remedies. *See* 29 U.S.C. § 696(d). Moreover, the plaintiff has not offered any evidence of age discrimination and he has failed to respond to the defendant's argument that he failed to exhaust his administrative remedies. Thus, the claim would be abandoned in any event. *Anyan v. New York Life Ins. Co.*, 192 F.Supp.2d 228, 237 (S.D.N.Y.2002).[2]

Any claims of discrimination for events that occurred more than 300 days before the plaintiff's complaint to the EEOC on December 10, 1999 are time-barred. Thus, the plaintiff can only pursue claims

---

1. In this case, none of the claims in the plaintiff's original September 18, 1997 complaint before the CCHR would be timely because the plaintiff never pursued a timely federal action after the dismissal of those claims and all of the incidents necessarily occurred more than 300 days before the filing of the subsequent EEOC complaint on December 10, 1999. Moreover, the allegations in the CCHR complaint lack merit for the reasons explained below.

2. While there is a question whether the plaintiff specifically raised claims of race, color,

and sex discrimination before the EEOC, because he failed to check the boxes indicating that those were causes of discrimination against him, the defendant has only moved to dismiss the claim of age discrimination on the basis of a failure to exhaust administrative remedies. Moreover, the narrative description of the plaintiff's complaints could be construed to include these claims. In any event, as explained below the plaintiff has failed to present sufficient evidence of any discrimination against him.

of discrimination for discrete events that occurred after February 13, 1999, although prior events may be used in support of the plaintiff's argument that he was subjected to a hostile work environment. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, ——, ——–——, 122 .S.Ct. 2061, 2068, 2073–74, 153 L.Ed.2d 106 (2002).[3]

### B.

The defendant seeks summary judgment on the plaintiff's claim that he was discriminated against allegedly because of his Egyptian origin, color, race, religion and gender.

■ Claims of discrimination under Title VII are analyzed at the summary judgment stage under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting test. A plaintiff in a Title VII action carries the initial burden of establishing a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas* ); *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.1997). To state a prima facie case of discrimination the plaintiff must allege that he (1) is a member of a protected class; (2) was performing his job satisfactorily; (3) was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. 2742; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994); *Ali v. Bank of New York,* 934 F.Supp. 87, 92 (S.D.N.Y. 1996). However, the burden of establishing a prima facie case is de minimis. *Chambers,* 43 F.3d at 37.

When a plaintiff has successfully demonstrated the elements of a prima facie case, the burden of production shifts to the defendant to put forth a legitimate, nondiscriminatory reason for the employer's challenged action. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. After the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the prima facie case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that his membership in a protected class was. *Id.* at 254–56, 101 S.Ct. 1089; *Fisher,* 114 F.3d at 1336. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the. plaintiff remains at all times with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *see also Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; .*Fisher,* 114 F.3d at 1336. The Court of Appeals for the Second Circuit has instructed that in determining whether the plaintiff has met this burden, a court is to use a "case by case" approach that evaluates "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *James v. New York Racing Ass'n,* 233 F.3d 149, 156 (2d Cir.2000) (quoting *Reeves,* 530 U.S. at 148–49, 120 S.Ct.

---

**3.** The plaintiff's Complaint lists eleven dates on which Hawana alleges discriminatory acts occurred, although he does not specify what happened on each of those dates. Five of those dates precede February 13, 1999. (Compl.¶ 5.) Even if those dates were considered, the plaintiff has failed to adduce evidence that he was discriminated against on those dates.

2097); *see also Schnabel v. Abramson,* 232 F.3d 83 (2d Cir.2000). Although summary judgment must be granted with caution in Title VII actions "where intent is genuinely in issue, ... summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers,* 43 F.3d at 40.

The defendant alleges that the plaintiff has failed to show a prima facie case of discrimination and, in fact, has merely demonstrated that he is a member of a protected class.

■ The plaintiff has offered no evidence to support his claim that he was discriminated against on the basis of his national origin, color, race, religion or gender. There is no evidence that any adverse employment actions were taken against the plaintiff under circumstances giving rise to an inference of discrimination. Indeed, when repeatedly asked for evidence supporting his claims of discriminatory animus, the plaintiff failed to produce such evidence. Hawana initially accused Supervisors Frank Olton, John Pape, Doris Franko and Mara Milat of discriminating against him. (Hawana Dep. at 193.) However, when asked to explain why he believed this to be the case, the plaintiff undermined his own claim. For example, when the plaintiff appeared to confuse national origin discrimination with religious discrimination, he was asked which category was the basis for his claim against Ms. Franko. Hawana answered, "To the best of my description it was national origin, because I just come up to that conclusion because I see drastic harassment...." (*Id.* at 194–95.) When asked why he believed that Mr. Pape discriminated against him because of his national origin, the plaintiff answered, "This is the best of my explanation ... because I see him treat me different from the rest of the workers. I don't know why." (*Id.* at 196.) With respect to Mr. Olton the plaintiff testified:

"Q: Once again, because Mr. Olton treats you different, you assume he is discriminating against you because of your national origin?

A: Exactly."

(*Id.; see also id.* at 171, 177, 195–97.)

After he said he thought Ms. Milat discriminated against him because of national origin, the plaintiff corrected himself:

"Oh, maybe I make a mistake anyway. It was religion thing between me and Mara Milat. I think it was religion thing.

Q: So you don't think it was national origin?

A: Yes, I think it's a religion thing. It's more than that."

(*Id.* at 194.) [4]

The plaintiff attributed a remark to Ms. Franko to the effect, "In your country you don't believe the woman could be your supervisor on the job. You like to supersede the woman. You like to control the woman." (*Id.* at 197.) But given the number of supervisors, such a single stray remark would not be sufficient to raise an inference of discrimination. *See Xiao v. Continuum Health Partners, Inc.,* 2002 WL 1586954, at *5 (S.D.N.Y. July 17, 2002) (two stray remarks did not support an inference of national origin discrimination). Moreover, the plaintiff also testified that he had a personality conflict with Ms. Franko and did not point to evidence that any adverse actions were based on any discriminatory animus. With respect to Ms. Franko, the plaintiff testified:

[Ms. Franko] was putting lot of pressure on the woman, and woman consume all

---

**4.** This testimony undercuts the plaintiff's allegations in his EEOC complaint that Ms. Milat had made a comment that was negative to "Arabs and Egyptians."

these pressures; I couldn't take it. She was putting lot of pressure on the woman, treat them—you know, I have a lady name Cheryl something, and she was being treated the same way like I am, mostly, and they took a lot of pressure from her. And I don't know. Maybe because maybe they don't know right to defend themselves or they need the job or just maybe this is the only skill they have in life or something. I don't know. It's just she put lot of pressure on them, and they take it.

And I don't know why I am the only one she was picking on, because I don't have no good explanation for this, because I remember that this thing happened because I am the only one in the group. I was a male and women like to talk to me. And this woman jealous. I don't know why. Whenever she see woman talk to me, she is like a fire, you know. Whenever she see me talk to a lady or a group in the office, she is in a fire, like, you know. I don't know. She is just like little jealous or something, take it personal.

(*Id.* at 189–90.) The plaintiff's evidence is based on his conclusory assumptions that four separate supervisors took actions against him based on discriminatory motives. But the plaintiff's personal conclusory assumptions are insufficient to support such an inference. *See Tanay v. St. Barnabas Hosp.,* 99 Civ. 9215, 2001 WL 262695, at *6 (S.D.N.Y. Mar.15, 2001); *Alleyne v. Four Seasons Hotel,* 99 Civ. 3432, 2001 WL 135770, at *11 (S.D.N.Y. Feb.15, 2001), *aff'd,* 25 Fed.Appx. 74, 2002 WL 109353 (2d Cir. Jan.23 2002); *Rodriguez v. Human Res. Admin. For Children's Serv.,* 99 Civ. 6866, 1998 WL 879690, at *4 (S.D.N.Y. Dec.16, 1998).

██ Many of the actions about which the plaintiff complains could not even be found to be adverse employment actions. The plaintiff appears to complain about a failure to transfer him. (Hawana Dep. at 274–75.) But the transfer was sought simply to get away from his supervisor and involved no change in pay or title. (*Id.*) The denial could not be considered an adverse employment action. *See Lee v. New York State Dept. of Health,* 98 Civ. 5712, 2001 U.S. Dist. LEXIS 11287, at *52 (S.D.N.Y. Mar. 26, 2001) (finding that the denial of a transfer request seeking a new supervisor rather than changes in terms or conditions of employment did not constitute an adverse employment action); *adopted by Lee v. New York State Dept. of Health,* 98 Civ. 5712, 2001 WL 34031217, 2001 U.S. Dist. LEXIS 11288 (S.D.N.Y. Apr. 23, 2001); *see also Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000).

██ The plaintiff also complains about negative reports written about him by Mr. Pape and Ms. Franko. (Hawana Dep. at 267, 271.) Negative evaluations can be adverse employment actions only if they give rise to material adverse changes in work conditions. *See Figueroa v. City of New York,* 198 F.Supp.2d 555, 568 (S.D.N.Y.2002) (collecting cases); *Valentine v. Standard & Poor's,* 50 F.Supp.2d 262, 283–84 (S.D.N.Y.1999) (collecting cases), *aff'd* 205 F.3d 1327 (2d Cir.2000) (table).

██ It is plain that the plaintiff's termination was an adverse employment action. However, the existence of the independent collective bargaining mechanism which included both a grievance procedure and an arbitration eliminates any inference that the termination occurred under circumstances giving rise to an inference of discrimination. The plaintiff's termination became effective on February 10, 2000 only after a Step II hearing at which the hearing officer upheld the termination. Moreover, the termination was subsequently upheld in a lengthy opinion by an

independent arbitrator who reviewed the evidence and found that there was ample cause to terminate the plaintiff. This case is thus quite similar to *Collins v. City of New York Transit Auth.*, 305 F.3d 113 (2d Cir.2002).

In *Collins*, the plaintiff had been terminated on June 13, 1991. Thereafter, on October 22, 1991 the arbitration board upheld the termination and the termination was implemented. The Court of Appeals noted that the arbitration decision by an unbiased and neutral adjudicator was highly probative of the absence of discriminatory intent in the termination. *Id.* at 119. So too here. The arbitrator issued a thorough decision after listening to the testimony of the plaintiff and other witnesses and issued a decision that is completely consistent with the absence of any discriminatory intent in the termination. As the Court of Appeals explained:

> [A] negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee.... However, a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link. Where, as here, that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised. Here, however, the tribunal received all the available evidence in an evenhanded proceeding and rendered a decision consistent with the almost overwhelming evidence....

*Id.* (internal citation omitted).

 In addition, even if the plaintiff had presented sufficient evidence of a prima facie case, the defendant has plainly presented non-discriminatory reasons for its actions—the plaintiff's pattern of abuse against his supervisors and co-workers that was documented in numerous contemporaneous complaints and which was found to exist in the union grievance proceeding and by the independent arbitrator. In light of the non-discriminatory reasons proffered by the defendant, the plaintiff has the opportunity to show that these reasons were merely a pretext for discrimination. However, the adverse arbitration decision is again useful at this stage of the analysis. *Id.* at 119 n. 1 ("[W]e do not mean to preclude treatment of such a defense as an attack on a claim of pretext."). In this case, in the absence of evidence of discrimination and in the face of the strong non-discriminatory reasons proffered by the defendant, no reasonable juror could find that discriminatory animus was a motivating factor in any adverse action taken against the plaintiff. *See Tanay,* 2001 WL 262695 at \*6–7; *Alleyne,* 2001 WL 135770 at \*11–13.

### C.

 The defendant also seeks summary judgment on the plaintiff's retaliation claim. Hawana alleges that the defendant retaliated against him for filing a complaint with the CCHR, for filing union grievances, and for seeking other relief from City agencies. (Compl.¶ 8.) To establish a prima facie case of retaliation, the plaintiff must demonstrate that (1) he was engaged in a protected activity; (2) the defendant was aware of this activity; (3) the defendant took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993).

In *Collins,* the plaintiff has satisfied the first three elements of the prima facie showing: (1) He engaged in the protected activity of opposing an unlawful employment practice; (2) the defendants were aware of this activity; and (3) Hawana was terminated, thus suffering an adverse employment action. The plaintiff has not, however, put forth any evidence that he was terminated from ACS in retaliation for his complaints. As a result Hawana failed to demonstrate the necessary causal link between his protected behavior and the alleged retaliation.

Without evidence of a causal relationship, Hawana could still make this showing by demonstrating that there was a short time lapse between the protected activity and the alleged retaliation. *See Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217–18 (2d Cir.2001) (finding a genuine issue of material fact precluding summary judgment when only twenty days elapsed between the time that the defendant learned that the plaintiff had hired an attorney to pursue gender discrimination claims against the defendant and when she was terminated); *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996) (causal connection shown where only twelve days separated the protected activity from the adverse employment action). The Second Circuit has not, however, set a bright line rule as to when the temporal link becomes too attenuated to demonstrate causation. *Gorman–Bakos v. Cornell Co-op. Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001).

 Unlike *Cifra* and *Reed,* however, a markedly longer period of time separated the plaintiff's complaints from his termination. In a causation analysis, the Court must look to when the defendant first became aware of the plaintiff's protected behavior. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). In Hawana's

case, Hawana points to the complaint he filed with the CCHR on September 18, 1997. But this occurred almost two years before the August charges were brought against him that eventually led to his termination. That is too attenuated to suggest any causal relationship. *See, e.g., Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990); *Figueroa,* 198 F.Supp.2d at 570. The EEOC complaint filed on December 10, 1999 could not have been causally related to his termination because the charges that led to Hawana's termination had already been filed. Indeed the plaintiff did not rely on that filing as a basis for his retaliation claim in his complaint.

In any event, even if the plaintiff had satisfied the burden of presenting evidence to satisfy his prima facie case, the defendant has presented a non-retaliatory reason for his termination. For the reasons explained above, and particularly in light of the weight to be accorded to the arbitrator's decision, no reasonable juror could find that retaliation was a motivating factor in the plaintiff's termination.

### D.

 The defendant moves for summary judgment on the plaintiff's disability discrimination claim. To survive the defendant's motion for summary judgment, the plaintiff must make out a prima facie case of disability discrimination. To do so, the plaintiff must show that: "(1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without a reasonable accommodation; and (4) he was [discriminated against] because of his disability." *Reeves v. Johnson Controls World Srvs., Inc.,* 140 F.3d 144, 149–50 (2d Cir.1998); *see* 42 U.S.C. § 12112(a); *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d

867, 869–70 (2d Cir.1998); *Usala v. Consol. Edison Co.*, 141 F.Supp.2d 373, 380 (S.D.N.Y.2001). The defendant asserts that the plaintiff fails to meet this burden because he has not shown that he is disabled under the ADA.

The ADA defines "disability" with respect to an individual as "(a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). The plaintiff identifies his disability as severe depression, sleep and panic disorders, and high blood pressure. (Compl.¶ 7.) The plaintiff, however, has not shown that these ailments substantially limit a major life activity, nor does he even specify how these conditions affect him. In order to "substantially limit" a major life activity, the disability must either 1) cause the plaintiff to be unable to perform a major life activity that an average person in the general population could perform; or 2) significantly restrict as to the condition, manner or duration under which the plaintiff can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i).

■ When assessing whether the plaintiff is substantially impaired in the major life activity of working, courts must look at the degree to which the plaintiff's impairment prevents him from performing a wide range of tasks rather than merely a set of limited tasks associated with a specific job. *See, e.g., Toyota v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 693, 151 L.Ed.2d

615 (2002) ("When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job."); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 643 (2d Cir. 1998) ("The ability to work is substantially limited ... if the plaintiff is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.' 29 C.F.R. § 1630.2(j)(3)(i).").

■ Hawana has put forth no evidence to show that his ailments effect him to such a degree. To determine whether the plaintiff's condition qualifies as a disability under the ADA, the Court must engage in a fact-specific analysis of how the condition affects the plaintiff personally. *See Reeves*, 140 F.3d at 151; *Pimentel v. City of New York*, 00 Civ. 0326, 2045 D.P.R. 91501 WL 1579553, at *11 (S.D.N.Y. Dec.11, 2001). The doctors' notes that Hawana provides from Don Kerson, M.D. diagnose the plaintiff with major depression but do not indicate that the condition seriously impairs his ability to perform a major life activity. (Letter from Dr. Don Kerson re: Hameed Hawana dated Dec. 10, 1997 ("Kerson 1") attached as Ex. 10 to Pl.'s Mem. Opp. Sum. J.; Letter from Dr. Don Kerson faxed to Janet Brown dated May 5, 1999 attached as Ex. 12 to Pl.'s Mem. Opp. Sum. J.) And while one letter submitted by Dr. Gordon R. Meyerhoff does suggest transferring the plaintiff to alleviate his depression, it would be inconsistent with *Colwell* to find that the plaintiff's ability to work is substantially impaired if in fact he is able to perform the same job as long as it is for a different

supervisor. (Letter from Dr. Gordon R. Meyerhoff re: Hameed Hawana dated Nov. 24, 1997 attached as Def.'s Ex. B to Labate Decl.) Furthermore, Hawana's own deposition does not explain how his condition meets this test. (Hawana Dep. 208–211). Because Hawana has offered no evidence that *his* impairments substantially limit a major life activity, no reasonable jury could determine that the plaintiff is disabled under the ADA.[5] *See Colwell,* 158 F.3d at 644–45; *Pimentel,* 2001 WL 1579553 at *13. Indeed, the plaintiff concedes that despite his alleged impairments he could do his job. (Hawana Dep. at 83.)

The plaintiff has also failed to show that he was discriminated against because of his disability. He alleges that he was entitled to a transfer as a reasonable accommodation for his disability. A failure to provide a reasonable accommodation is a discriminatory practice. *Pimentel,* 2001 WL 1579553 at *11, *14. An employer's duty to accommodate a disabled employee includes transferring that employee to a vacant position for which the employee is qualified. *Id.* at *14 (quoting *Dalton v. Subaru–Isuzu Auto., Inc.,* 141 F.3d 667, 677 (7th Cir.1998)(citing 42 U.S.C. § 12111(9)(B))). However, the plaintiff has not shown that there was an available position that he could have been transferred to or that the transfer to another position would have accommodated his depression any better than the position that he had. "A request to transfer to avoid interactions with a particular supervisor, who is simply disliked, is unreasonable." *Pimentel,* 2001 WL 1579553 at *15.

The defendant's motion for summary judgment on this claim is granted.

### E.

The defendant seeks summary judgment dismissing the plaintiff's hostile work environment claim. To survive a motion for summary judgment the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000) (internal citations and quotations omitted); *see also Thompson v. American Eagle Airlines, Inc.,* 99 Civ. 4529, 2000 WL 1505972, at *6 (S.D.N.Y. Oct.6, 2000). "[T]he plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Cruz,* 202 F.3d at 570 (internal quotations and citations omitted); *accord Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir. 2000). The plaintiff must show both an objectively hostile work environment and that the plaintiff himself believed the environment to be hostile. *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2001) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). To determine whether the plaintiff has met this burden, the Court will look at factors such as the frequency and severity of the conduct, and whether it unreasonably interfered with the plaintiff's work perfor-

---

**5.** The plaintiff also fails to satisfy the two other potential definitions of disability under the ADA. First, the two doctors' notes submitted by the plaintiff fail to establish a record of a substantially limiting disability for the reasons discussed above because the documents do not specify any conditions that showed

such a disability. *See Colwell,* 158 F.3d at 645–46. Second, the plaintiff has put forth no evidence that the defendant regarded him as having a disability and thus he cannot prove that he is disabled in this way. *See id.* at 646.

mance. *Id.* (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367).

The defendant alleges that the plaintiff has pointed to only one alleged remark by Hawana's supervisor, Doris Franko, in which Ms. Franko is alleged to have stated that because the plaintiff came from a "third-world country," he did not like to be supervised by a woman. (Hawana Dep. at 177–78, 197). The defendant argues correctly that this single remark could not be sufficient to create a hostile work environment. The plaintiff's opposition papers do not respond to the defendant's argument on this point. The plaintiff points to no other evidence that the work environment was hostile to him on the basis of his membership in a protected class. An isolated remark is woefully insufficient to rise to the level of harassment required to overcome a motion for summary judgment. The plaintiff has demonstrated neither "a single incident [that] was extraordinarily severe," nor a "series of incidents [that] were sufficiently continuous and concerted" to alter the conditions of his workplace. *Cruz,* 202 F.3d at 570. Because the plaintiff has failed to meet this burden, the plaintiff's claim on this basis cannot survive.

### F.

■ To the extent that the plaintiff claims either that he was the victim of same sex discrimination or a hostile work environment based on his gender, the plaintiff has failed to adduce sufficient evidence for any such claim to survive. Hawana alleges that his supervisor, Douglas Solomon, committed same-sex sexual harassment against him. In his deposition, Hawana testified that Mr. Solomon discriminated against him because Hawana had reported Mr. Solomon to Mara Milat after Mr. Solomon allegedly touched the plaintiff's leg in an inappropriate manner. (Hawana Dep. at 231.) The plaintiff initially cited two incidents of inappropriate

touching. First, Mr. Solomon allegedly touched Hawana's back and neck. And then, in another instance, he touched Hawana's leg. (*Id.* at 234). However, Hawana explicitly clarified that the first incident was not inappropriate because "I figure out that he was just playing with me, like a co-worker, you know, friendly." (*Id.* at 235.) Hawana continued to maintain that the second touching, which allegedly occurred while Mr. Solomon was training Hawana at the plaintiff's desk, was "not normal." (*Id.* at 234.) The plaintiff continued, "Maybe for him it's normal, but for me I didn't feel any comfort. I didn't feel relaxed about it." (*Id.*) He went on to explain that "I got scared that maybe he wanted me to have sex with him. I don't know what he had in his mind .... I don't know what he comes from, but he comes too close." (*Id.* at 235.) It appears that in the second incident the plaintiff alleges that Mr. Solomon "pinch me on my hips here, my hips." (*Id.* at 236.) The plaintiff concedes, however, that when he told Mr. Solomon to remove his hand, Mr. Solomon did so, although the plaintiff said that he pushed Mr. Solomon's hand away. (*Id.* at 242.)

In *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), the Supreme Court held that "nothing in Title VII necessarily bars a claim of discrimination 'because of ... sex' merely because the plaintiff and the defendant ... are of the same sex." But the Court cautioned that, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination ... because of ... sex.*" *Id.* at 80, 118 S.Ct. 998 (internal quotations omitted) (alteration in the original). To prove a case of sexual harassment under Title VII, the Court explained, the crucial question is whether members of one sex are exposed to disadvantageous terms or conditions in the workplace that

employees of the other sex are not exposed to. *Oncale*, 523 U.S. at 80, 118 S.Ct. 998. Such terms or conditions must be "so objectively offensive as to alter the 'conditions' of the victim's employment" as judged from the perspective of a reasonable person in light of all of the circumstances. *Id.* at 81, 118 S.Ct. 998.

Crediting the plaintiff's allegations against Mr. Solomon for the purposes of this motion, the two alleged acts which occurred in an isolated period of time during the plaintiff's entire tenure at ACS, are not tantamount to the type of severe and pervasive sexual harassment that is actionable under Title VII. Isolated acts can only meet this threshold if very serious. *See Alfano*, 294 F.3d at 373–74 (discussing the strict requirements for a plaintiff to make out a sexual harassment claim under Title VII). The first incident the plaintiff conceded was a friendly act that could not be considered harassing. The second incident, a brief touching on the leg and a pinching on the hip, which ended as soon as the plaintiff expressed his discomfort, while unacceptable, is not so severe as to alter the conditions of Hawana's work environment. Indeed this incident is far less severe than the circumstances in other cases that the Court of Appeals has found to be insufficient as a matter of law to alter the conditions of a plaintiff's employment. *See Alfano*, 294 F.3d at 379–81 (collecting cases). Perhaps realizing the weakness of his claim, Hawana tried to embellish the alleged incident in his responsive Rule 56.1 statement in which he asserted that Mr. Solomon in fact placed his hand on Hawana's thigh and then moved his hand up to Hawana's groin. (Pl.'s Resp. Rule 56.1 St. ¶ 7.) This statement contradicts Hawana's earlier deposition testimony and cannot be considered evidence in response to the motion for summary judgment. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.

2001); *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

Summary judgment is granted to the defendant on Hawana's claim of sexual harassment.

G.

Finally, the plaintiff attempts to add new claims in his opposition papers that were not previously alleged. The plaintiff now contends that "D. Williams" discriminated against him (Pl.'s Resp. Rule 56.1 St. ¶ 24) but D. Williams, presumably Supervisor Denise Williams, had never before been named as a person in the defendant's employ who discriminated against the plaintiff. (Hawana Dep. at 170; EEOC Compl.) The plaintiff cannot raise new claims in response to a motion for summary judgment. *McAllister v. New York City Police Dept.*, 49 F.Supp.2d 688, 691, 698 (S.D.N.Y.1999) (collecting cases). The Court has considered all of the arguments raised by the parties and, to the extent not explicitly discussed, they are either moot or without merit.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of the defendant and to close this case.

**SO ORDERED.**