**Donovan HOWARD, Plaintiff,**

v.

**The CITY OF NEW YORK, and New York City Human Resources Administration, Defendants.**

**No. 02 Civ. 5817(JGK).**

United States District Court, S.D. New York.

Jan. 29, 2004.

Donovan Howard, Haverhill, MA, Pro se.

Donald Christopher Sullivan, Sara Alison Mason, Office of Corporation Counsel NYC, New York City, for Defendants.

## OPINION and ORDER

KOELTL, District Judge.

The plaintiff Donovan Howard ("Howard") alleges that the defendants, the City of New York and the New York City Human Resources Administration ("HRA"), are liable to him for employment discrimination and wrongful termination. The plaintiff has moved *pro se* for partial summary judgment on his claims for declaratory and injunctive relief based on the alleged actions of the defendants' attorneys and on the alleged inability of the defendants to support their assertions that the plaintiff was terminated for unsatisfactory work performance and insubordination. After the motion for partial summary judgment was fully briefed, the plaintiff submitted a motion for sanctions pursuant to Rule 11(c) of the Federal Rules of Civil Procedure based on the defendants' alleged failure to file their opposition papers promptly.

### I.

The plaintiff was employed by the HRA as a provisional Fraud Investigator, Level I, from on or around August 2, 1999 until June 30, 2000. (Def.'s Rule 56.1 St. ¶ 1.) In his job, the plaintiff was responsible for investigating possible fraud or misconduct among officials, employees, contract agencies, and clients. (*Id.* ¶ 3.) The plaintiff was terminated on June 30, 2003 and has brought three causes of action. First, he has alleged that his termination was the result of discrimination based on race, color, and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Second, he alleges that he was subjected to a hostile work environment, primarily by his supervisor, Nancy Duplessy ("Duplessy"). Third, the plaintiff claims that the defendants retaliated against him for, among other things, his complaints about Duplessy and his requests to be transferred. *See* 42 U.S.C. § 2000e–3(a). The plaintiff moves for partial summary judgment on these claims.

The defendants contend that the plaintiff was terminated for legitimate and non-discriminatory reasons. In opposition to the plaintiff's motion, the defendants have submitted the affidavit of Zivko Pulisic ("Pulisic"), who was the site manager of the plaintiff's work location and who is personally familiar with the circumstances surrounding the plaintiff's employment. (*See* Aff. of Zivko Pulisic, Deputy Director of HRA's Eligibility Verification Review Program ("Pulisic Aff."), dated July 16, 2003, at ¶ 1, attached at Decl. of Assistant Corporate Counsel Sara Mason ("Mason Decl."), Ex. B.) Pulisic stated that the plaintiff's "termination was due in part to his poor work performance, which included his inappropriate behavior with interviewees and his pattern of lateness." (Pulisic Aff. ¶ 8.) To support this allegation, the defendants have submitted documents from the plaintiff's employment file, including complaints and memoranda that allegedly memorialize a pattern of improper conduct and delinquency by the plaintiff. (*See id.* ¶¶ 9–10; Mason Decl., Exs. D, E.) The defendants have also submitted an employee evaluation that gave the plaintiff an overall rating of "unsatisfactory" and commented on his allegedly insubordinate behavior. (*Id.* Ex. C.)

The plaintiff maintains that the allegations about his poor work performance are not true and were made in retaliation by Duplessy and others in the HRA. The plaintiff further accuses defense counsel of acting in bad faith and making intentional misrepresentations of fact by arguing that

he was terminated for poor job performance.

## II.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir.1993); see also Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

As an initial matter, the plaintiff's motion is procedurally defective. The plaintiff failed to include a statement of undisputed facts as required by Local Rule 56.1. The plaintiff, in his reply to the defendants' opposition papers, attempts to state undisputed material facts but instead provides a list of legal conclusions and accusations that, at best, merely dispute the facts as presented by the defendants. The failure of a moving party to provide a Local Rule 56.1 Statement is typically sufficient grounds to dismiss the motion, although pro se litigants may be given some latitude. See In re Motel 6 Sec. Litig., 161 F.Supp.2d 227, 232 (S.D.N.Y.2001); Armstrong v. Tucker, No. 97 Civ. 7388, 2000 WL 33593292, at *2 (S.D.N.Y. Feb.29, 2000). The plaintiff also failed to request a conference before making his motion. Requesting a conference is a reasonable requirement and would have, for example, helped ensure that the plaintiff was aware

of what had to be submitted to make his motion. Nonetheless, the motion will be considered on the merits.

### III.

■ The plaintiff first moves for partial summary judgment on the claim that the defendants wrongfully terminated and discriminated against him based on race, color, and gender in violation of Title VII. *See* 42 U.S.C. § 2000e–2(a)(1).[1] Claims of discrimination under Title VII are analyzed at the summary judgment stage under the burden-shifting test announced by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Hawana v. City of New York,* 230 F.Supp.2d 518, 526 (S.D.N.Y.2002). The plaintiff carries the initial burden of establishing a *prima facie* case of discrimination by alleging that he (1) is a member of a protected class; (2) was performing his job satisfactorily; (3) was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Chambers,* 43 F.3d at 37.

Once the plaintiff has demonstrated the elements of a *prima facie* case, the burden of production shifts to the defendants to put forth a legitimate, nondiscriminatory reason for the employer's challenged ac-

tion. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). After the defendants articulate a legitimate reason for the action, the presumption of discrimination raised by the *prima facie* case drops out, and the plaintiff bears the ultimate burden of demonstrating that his membership in a protected class, rather than the reasons proffered by the defendants, was the true basis for the employment decision. *Id.* at 254–56, 101 S.Ct. 1089; *see also Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *Chambers,* 43 F.3d at 38; *Hawana,* 230 F.Supp.2d at 526.

The defendants have articulated a legitimate reason for the plaintiff's termination and have submitted ample evidence to support their allegation that the plaintiff's "termination was due in part to his poor work performance, which included his inappropriate behavior with interviewees and his pattern of lateness." (Pusilic Aff. ¶ 8.)[2] The defendants have produced documents from the plaintiff's employment file, including complaint forms and memoranda from supervisors alleging that the plaintiff was rude and acted inappropriately during interviews. (*See* Mason Decl. Ex., D.) One complaint was filed by a client/interviewee, and multiple complaints were made by translators who worked with the plaintiff during interviews. (*See id.*) The employment file also includes forms documenting incidents where the plaintiff was late ei-

1. Based on the plaintiff's papers, it is unclear whether he is seeking summary judgment on the issue of liability or specifically on whether the defendants can assert that the plaintiff was terminated for poor work performance and insubordination. As will be explained, the distinction is immaterial because the defendants have submitted ample evidence, at the very least, to create issues of material fact on this motion as to the alleged legitimate

nondiscriminatory reasons for the plaintiff's termination.

2. The defendants, in their papers, emphasized the evidence supporting their claim that the plaintiff was terminated for a legitimate reason and did not explicitly argue that the plaintiff failed to make a prima facie case of discrimination. The same evidence would undercut the second and fourth requirements of the plaintiff's *prima facie* case.

ther in arriving to work in the morning or in returning from lunch. (*See id.*)

Overall, the employment file reveals a deterioration in the working relationship between the plaintiff and his supervisor, Duplessy, particularly from January through May 2000. (*See* Mason Decl., Ex. E.) Memoranda from Borough Chief Kai Wright memorialize the increasing hostilities between the plaintiff and Duplessy. (*See id.*) The conflict heightened in April 2000 when Duplessy alleged that the plaintiff made derogatory and offensive comments toward her. (*See id.*) These allegations, in part, led to a recommendation of disciplinary action and ultimately a recommendation for termination dated May 19, 2000. (*See id.*)

Further documenting the plaintiff's allegedly substandard work performance, the defendants provided a Non–Managerial Performance Evaluation form for the plaintiff for the period of October 1, 1999 to May 22, 2000. (Mason Decl., Ex. C.) The form was filled out by Duplessy and signed by the evaluation reviewer, Kai Wright. The plaintiff's overall rating was "Unsatisfactory." He received a "Marginal" rating for his investigations of agency officials and an "Unsatisfactory" rating for his fraud investigations. The evaluator noted that the plaintiff completed his investigations in an untimely manner and without following proscribed procedures. The evaluation further stated that the plaintiff displayed hostility when asked to follow specific agency policies. Overall, the evaluation raised many of the issues raised in the memoranda described above: that the plaintiff displayed a lack of discipline, was insubordinate, and was consistently late.

The plaintiff contends that the characterizations of his work performance are false and have been made for discriminatory and retaliatory reasons. To support his assertions, the plaintiff has provided, among other things, a complimentary letter of recommendation, dated March 13, 2000, from a Fraud Investigator Supervisor who worked with the plaintiff, although not directly as the plaintiff's supervisor. (*See* Pl.'s Aff. Supporting Grounds of Opp. to Defs. Mem. of Law & Disputed Material Facts Dated 11–07–2003, Ex. 2 (Letter from Irene Anthony, Fraud Investigator Supervisor, dated Mar. 13, 2000).) The plaintiff also submitted the affidavit of his union representative, Jose Santos, to vouch for the plaintiff's character and to support his argument that Duplessy falsely accused the plaintiff of misconduct and targeted him because of his race and sex. (*Id.* Ex. 4 (Aff. of Jose Santos, dated Sept. 21, 2000).) However, at best, the plaintiff's evidence supports his contrary account of what occurred and shows that material facts are in dispute.

It is plain that the defendants have articulated a legitimate nondiscriminatory reason for terminating the plaintiff and have presented evidence to support that defense. On a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmoving party, and it is clear that the evidence could support a finding by the trier of fact that the plaintiff was terminated for substandard work performance and insubordination. The plaintiff has not shown that he is entitled to summary judgment on the claim that he was terminated because of unlawful discrimination.

## IV.

 The plaintiff also seeks partial summary judgment on his claims that he was subjected to a hostile work environment and that he was given negative evaluations and terminated in retaliation for, among other things, complaints he made against his supervisor and his requests to be

transferred to a different unit. For the same reasons given above, the plaintiff is not entitled to summary judgment on either claim.

To prevail under a theory that he was subjected to a hostile work environment based on race or sex in violation of Title VII, the plaintiff must establish two elements. First he must demonstrate that the harassment was "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (alteration in original) (internal quotation omitted); *see also Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Fitzgerald v. Henderson,* 251 F.3d 345, 356 (2d Cir. 2001). The plaintiff must establish that the work environment was objectively and subjectively hostile and must show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000) (internal quotations and citations omitted); *Hawana,* 230 F.Supp.2d at 532–33. Second, the plaintiff must show a specific basis for imputing the hostile work environment to the employer. *See Fitzgerald,* 251 F.3d at 357.

Title VII also prevents employers from retaliating or discriminating against an employee who has opposed an unlawful employment practice. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, the plaintiff must demonstrate that (1) he was engaged in a protected activity; (2) the defendants were aware of this activity; (3) the defendants took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *See Fitzgerald,* 251 F.3d at 358; *Hawana,* 230 F.Supp.2d at 529.

As explained above, the plaintiff's allegations are plainly insufficient to establish without material dispute that he was subjected to sufficiently severe or pervasive harassment or that he was terminated for retaliatory, and not legitimate, reasons. As with the discrimination claim, the hostile work environment and retaliation claims revolve around the relationship between the plaintiff and his supervisor, and they clearly involve issues of disputed material fact. The defendants contend that the plaintiff was terminated for poor work performance and that it was the plaintiff who created a hostile and abusive work environment for his supervisor. The defendants have presented ample evidence to support their allegations, and while the plaintiff has presented some evidence to the contrary, he has not established that there are no material facts in dispute or that he is entitled to partial summary judgment on any issue.

## V.

The plaintiff has also argued that he is entitled to partial summary judgment based on the conduct of the defendants' attorneys. To the extent that the plaintiff is attempting to reargue issues already decided by Magistrate Judge Dolinger, or to reassert objections overruled by this Court, his arguments are without merit. (*See* Mason Decl. Exs. G, H, I.) In any event, the plaintiff has failed to establish that the defense attorneys' conduct was inappropriate or that he is entitled to any sanctions.

## VI.

In his most recent letters, dated December 23, 2003 and January 16, 2004,

the plaintiff asserts that the defendants failed to comply with this Court's Order, dated October 24, 2003, which directed the defendants to file an opposition to the motion for partial summary judgment by November 7, 2003. The plaintiff seeks sanctions under Rule 11 of the Federal Rules of Civil Procedure, and he has filed a motion, dated January 16, 2004, to that effect.

The defendants' opposition papers were filed with the Court on December 22, 2003, but they include a declaration of service indicating that they were served on the plaintiff on November 7, 2003. It is clear that the plaintiff did receive the papers around that date because he filed a reply with the Pro Se Office on November 13, 2003. Under Rule 5(d) of the Federal Rules of Civil Procedure, papers must "be filed with the court within a reasonable time after service." Fed.R.Civ.P. 5(d). The defendants should have promptly filed their papers after serving them on the plaintiff. However, the defendants served the opposition papers in a timely fashion and the plaintiff has not been prejudiced by the failure to file the papers promptly.

The Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R.Civ.P. 1. It is plain that no sanctions are appropriate simply because the defendants did not file their papers more promptly. Motions and cases are to be decided on the merits if at all possible and not on the basis of attempts at exploiting procedural defects that have no substantive effect. In this case, the Court has considered the substance of the plaintiff's motion even though he failed to comply with the requirements of Local Rule 56.1 and the requirement to seek a pre-motion conference. It is similarly appropriate for the Court to consider the substance of the defendants' papers submitted in opposition.

### Conclusion

For the reasons explained above, the plaintiff's motion for partial summary judgment is denied on all issues. The plaintiff's motions for sanctions are also denied.

**SO ORDERED.**