David ECHEVARRIA, Plaintiff,

v.

DEPARTMENT OF CORRECTIONAL SERVICES OF N.Y. CITY, Warden of Ricker Island, Corr. Fac. Building C–74, A. Roclufle, Officer, Defendants.

No. 97 Civ. 6411(JES).

United States District Court, S.D. New York.

May 5, 1999.

David Echevarria, Brocton, NY, pro se.

Michael D. Hess, Corporation Counsel of the City of New York, New York City, for defendants, Steven A. Friedman, James Joseph Misrahi, Assistant Corporation Counsel, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff David Echevarria ("Echevarria"), an inmate in the custody of the New York State Department of Correctional Services proceeding pro se, brings the instant action pursuant to 42 U.S.C. § 1983. Echevarria alleges that during his incarceration at Riker's Island Correctional Facility ("Riker's Island"), prison officials violated his civil rights by failing to protect him from an attack by another inmate. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants move for summary judgment; plaintiff has filed a cross-motion for summary judgment and for an extension of time to effect service of process. For the reasons that follow, defendants' motion is granted, and plaintiff's motion is denied.

## BACKGROUND

At the time of the events giving rise to this action, Echevarria was housed in the punitive segregation unit of the Adolescent Reception and Detention Center, Building C–74, on Riker's Island. *See* Verified Complaint, sworn to on July 27, 1997 ("Compl.") ¶ 10. Echevarria alleges that within that unit a divisive, racially-based conflict existed among the inmates.[1] Echevarria contends that the guards and the Warden knew of this hostility because of occasional incidents and arguments between the inmates.[2] Echevarria in particular had "problems" with one group of inmates that included an inmate named Genile Wilson ("Wilson"). *See* Echevarria Dep. at 56–59.

Echevarria contends that problems with Wilson began upon his arrival in the punitive segregation unit. Echevarria was frequently approached by Wilson's friends, who told Echevarria that Wilson was looking for him and wanted to fight. *See id.* at 57–62. On or about November 1, 1994, Echevarria was attacked by an inmate, whom he believed to be one of Wilson's friends, and sustained a cut on his face. *See id.* at 65–66.

On November 19, 1994, Echevarria and about five other inmates on his floor were escorted to the recreation cages. These

---

1. Echevarria states, "[I]t was Spanish against the Blacks." Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to Plaintiff's Cross–Motion for Summary Judgment, Appendix A ("Echevarria Dep.") at 64. As the facts as set forth in Echevarria's pleadings and motion papers are unclear, the Court relies upon Echevarria's oral deposition testimony to clarify the factual basis for his claims.

2. Echevarria describes certain altercations during which inmates "come in throwing stuff at you, hot water, hot soup, and the officer got to run in there and see what is happening." Echevarria Dep. at 64. Echevarria also alleges that corrections officers overheard occasional arguing and threats to "cut me and stuff like that." *Id.*

recreation cages stand side by side, each cage enclosing an area of about four hundred square feet and surrounded by a nine foot fence topped with barbed wire. *See id.* at 34. Soon after Echevarria entered one of these cages, another group of about eight inmates entered the adjacent cage. According to Echevarria the release of this particular group of inmates into the adjacent cage was a departure from ordinary prison procedures.[3]

Echevarria recognized Wilson among the group in the adjacent cage and immediately approached the corrections officer on duty at the cage. Echevarria alleges he told the corrections officer of his "problems" with Wilson and identified Wilson to the officer. He stated that he feared for his life and asked to return to his cell. According to Echevarria, the officer replied, "You're in the yard already, we can't take you back." *Id.* at 68. Echevarria returned to a group of inmates gathered in the cage.

Moments later, Wilson called Echevarria to the fences dividing the cages and challenged him to jump over the cage fence to meet between the cages to fight. Echevarria refused, and Wilson and two other inmates immediately began to climb the fence.[4] Echevarria called to the guards for help and observed that the guards appeared "panicked when they saw what happened, because that was the first time they ever saw something like that." *Id.* at 76. The officers called for a special team to handle the problem and ordered Wilson to climb down from the fence several times. Wilson defied these orders, scaled both fences, and attacked Echevarria with a razor, cutting his face and back. *See id.* at 77–78. About five minutes later, the special team of officers arrived and found Echevarria injured and fleeing from Wilson. The corrections officers on duty at the recreation cages waited for the special team to control the situation and then escorted Echevarria to a clinic for medical treatment. *See* id. at 81–83.

Echevarria filed this action on August 29, 1997. In his complaint he names as defendants the Department of Correctional Services of New York City ("DOC"); B. Conroy, the Warden of Riker's Island Correctional Facility, Building C–74 ("Warden"); and Officer A. Rodulfo.[5] Echevarria alleges that the defendants violated his civil rights by failing to protect him from the attack of another inmate. Echevarria seeks damages in the amount of $550,-000.00. Echevarria effected service of process only upon the DOC and the Warden. Officer Austin Rodulfo, having never been served, has not appeared in this action.

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that (1) defendant DOC is not a suable entity; (2) the Warden was not personally involved in the incident; (3) Echevarria's injuries were not caused by a municipal policy, custom or practice; and (4) because Echevarria failed to serve Officer Rodulfo, his claims against Officer Rodulfo should be dismissed.

Plaintiff has filed a response to defendants' motion which he has titled a "cross-motion" for summary judgment. Plaintiff argues that defendants are not entitled to summary judgment because (1) the Warden was personally involved in the incident in which plaintiff was injured and (2) the implementation of a municipal policy caused his injuries. Echevarria also seeks

**3.** Echevarria testified, "[T]hey shocked me because I never seen these inmates come to the yard with us, they're not supposed to do that. What they do, if they bring one lower, which was the floor I was at . . what they're supposed to do is bring the south side and the north side to the yard.... [T]hey brought the second floor downstairs too." *See* id. at 65.

**4.** Of the three inmates, only Wilson succeeded in climbing over the fences. The other two inmates retreated after cutting themselves on the barbed wire. *See* id. at 77.

**5.** In his complaint, Echevarria misidentified defendant Officer Austin Rodulfo as "Officer A. Roclufle."

an extension of his time to serve Officer Rodulfo.

## DISCUSSION

A motion for summary judgment should be granted in favor of the moving party "if the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court's sole function is to determine whether, upon the conclusion of adequate discovery, any issue remains for trial. *See id.* at 249, 106 S.Ct. 2505. The Court must view all facts and rational inferences derived therefrom in a light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The Court shall consider each defendant in turn.

### Department of Corrections

The DOC argues that, although Echevarria has named it as a defendant, the DOC is not a suable entity. The New York City Charter states that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter ch. 17 § 396 (1998). Settled case law applying this provision establishes that suits against the DOC are suits against a non-suable entity and are properly dismissed upon that basis. *See Adams v. Galletta*, 966 F.Supp. 210, 212 (S.D.N.Y.1997); *Byas v. New York City Dep't of Correction*, 173 F.R.D. 385, 387–88 (S.D.N.Y.1997). The Court therefore dismisses plaintiff's claims against the DOC.

### The City of New York

Because Echevarria proceeds *pro se*, the Court liberally construes his complaint as naming the City of New York as a defendant. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). However, even if this Court treats Echevarria's claims against the DOC as claims against the City of New York, the Court must dismiss his claims because Echevarria has failed to offer any evidence that would support municipal liability under section 1983. A municipality may not be held liable for a civil rights violation committed by a municipal employee under a theory of *respondeat superior*. *See Monell v. City of New York Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, municipal liability in such a case requires the plaintiff to plead and prove that a municipal policy or custom caused the alleged constitutional violation. *See id.* at 694, 98 S.Ct. 2018.

Although a plaintiff may prove a municipal policy or custom without evidence of an express written policy, "a single event alleged in a complaint, especially if it involved only actors below the policy making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir.1998) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)). Echevarria has offered no evidence of any municipal policy or custom apart from the conduct of the individual corrections officers on duty on the day of Wilson's attack. Echevarria has offered only the events of November 19, 1994, to prove the existence of a municipal policy or custom. Accordingly, even if Echevarria's complaint could be read to name the City of New York as a defendant, such claim must fail, especially since Echevarria testified that bringing the inmates to adjacent cages was a departure from ordinary prison practices and that no other inmate had ever scaled the two nine-foot fences separating the exercise cages. The only reasonable inference from the testimony is that this incident was an iso-

lated event and thus not attributable to any prison policy or practice.

### Warden of Riker's Island

■ Echevarria also names the Warden of Riker's Island as a defendant. In order to prevail on this claim, Echevarria must demonstrate the Warden's personal involvement in the alleged constitutional deprivation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). Personal involvement, as defined by the precedents of the Second Circuit, includes direct participation in the violation, failure to remedy a violation, creation of a policy or custom which perpetuates the violation, or gross negligence in the management of subordinates responsible for the violation. *See Wright*, 21 F.3d at 501.

■ Echevarria argues that because the Warden supervised the facility, he knew or should have known of the hostility between Echevarria and Wilson and should have anticipated that additional precautions would be necessary to protect Echevarria from Wilson. However, merely asserting the Warden's role as a supervisor is insufficient to establish his personal involvement. As a result, Echevarria's claim against the Warden must fail.[6]

### Motion for Extension of Time for Service

■ Echevarria requests an extension of time to serve Officer Austin Rodulfo. Rule 4(m) of the Federal Rules of Civil Procedure requires a plaintiff to serve the summons and complaint upon all defendants within 120 days after the filing of the action. *See* Fed.R.Civ.P. 4(m). Rule 4(m) further provides, however, that this time may be extended if "the plaintiff shows good cause for the failure" to effect timely service. Courts generally consider three factors to determine whether such good cause exists: (1) whether the delay resulted from inadvertence or whether a reasonable effort to effect service has occurred, (2) prejudice to the defendant, and (3) whether the plaintiff has moved for an enlargement of time to effect service under Rule 6(b) of the Federal Rules of Civil Procedure. *See Gowan v. Teamsters Union (237) Local 840*, 170 F.R.D. 356, 359–60 (S.D.N.Y.1997).

■ Echevarria has failed to show a reasonable effort to effect service. Echevarria asserts that he failed to serve Officer Rodulfo because he did not know the correct spelling of his name and misspelled his name in the caption of his complaint. However, Echevarria apparently made no effort to determine through discovery the correct spelling of Officer Rodulfo's name, nor did he move for an extension of time to serve Officer Rodulfo until after the parties had completed discovery and defendants had moved for summary judgment. To allow Echevarria to serve Rodulfo at this point in the litigation would delay resolution of this action by requiring new discovery regarding an incident that occurred more than four years ago. In addition, granting Echevarria's motion would be futile. His claim against Officer Rodulfo is clearly barred by the applicable three-year statute of limitations.[7] *See Kaiser v. Cahn*, 510 F.2d 282, 284–85 (2d Cir.1974). The Court denies Echevarria's motion for an extension of time to effect service and dismisses his claim against

---

**6.** It is unclear from the complaint whether Echevarria has named the Warden as a defendant in his personal capacity or in his official capacity. Claims pursuant to § 1983 against municipal officials in their official capacity are treated as claims against the municipality. *See Brandon v. Holt*, 469 U.S. 464, 471–71, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Gonzalez v. City of New York*, No. 97 Civ. 2246, 1998 WL 382055 at *2 (S.D.N.Y. July 19, 1998). Any official capacity claim against the War-

den must fail for the reasons discussed above concerning municipality liability.

**7.** Echevarria does not claim that Officer Rodulfo ever received actual notice of this action or knew or should have known that Echevarria intended to name him as a defendant, *see* Fed.R.Civ.P. 15(c)(3), nor does he offer any other basis for this Court to find that his claim against Officer Rodulfo would relate back to the commencement of this action.

Rodulfo without prejudice pursuant to Rule 4(m).[8]

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment, motion for an extension of time to serve process, and motion for appointment of counsel are denied. Accordingly, all claims against defendants shall be and hereby are dismissed. The Clerk of the Court is directed to enter Judgment accordingly and to close the action.

It is **SO ORDERED.**

---

**8.** Echevarria also moved for appointment of counsel after the close of discovery and after the Court had set a briefing schedule on defendants' motion for summary judgment. This motion must be denied because the Court finds Echevarria's claims to be without substance. *See Hendricks v. Coughlin,* 114 F.3d 390, 393 (1997). The Court sees no evidence of a constitutional violation in defendants' failure to foresee that Wilson would scale two nine-foot barbed wire fences in order to attack Echevarria or in the decision of the officers on duty to await the arrival of a specially-equipped response team.